Estate of Myra C. Kitchen, by Clarence J. Hand and Victor C. Kitchen, as sole surviving executors v. Commissioner.
Estate of Kitchen v. Commissioner
Docket No. 1438.
United States Tax Court
1944 Tax Ct. Memo LEXIS 135; 3 T.C.M. (CCH) 877; T.C.M. (RIA) 44280; August 17, 1944
*135 Prior to the enactment of the first estate tax statute decedent created a trust in which she retained the right to the income for life. After her death the income was to go to her two children for their respective lives with remainder to the issue of each child in the part held for his or her benefit. The corpus was to revert to the decedent upon the death of the survivor of her two children. The provisions of the trust instrument were not modified or changed during decedent's lifetime. She died in 1938. Held, that the entire value of the corpus at the time of the death of decedent should be included in decedent's estate under the provisions of section 302(c) of the Revenue Act of 1926, as amended. Held, further, that that statute as applied here is not unconstitutional. Clarence J. Hand, Esq., for the petitioners. Robert S. Garnett, Esq., for the respondent. TYSON Memorandum Opinion TYSON, Judge: The respondent has determined a deficiency in estate tax against the estate of Myra C. Kitchen, in the amount of $4,491.30, resulting, in part, from respondent's inclusion in decedent's gross estate of the amount of $16,146.88 as the value, at the date of decedent's death, of *136 property transferred by decedent to a trust created by her on May 15, 1915. Other adjustments are not in controversy. The issues presented are: (1) Should the above mentioned amount of $16,146.88, or any part thereof, be included in decedent's gross estate; and, in the alternative, (2) if any part thereof is to be so included, should the amount be limited to the value of decedent's contingent reversionary interest. The proceeding has been submitted upon the pleadings and a stipulation of facts. Such of those stipulated facts as are not set forth herein are included by reference. [The Facts] The petitioners are the executors of the estate of Myra C. Kitchen who died on December 15, 1938. On May 15, 1915, the decedent and the New York Life Insurance & Trust Company executed a written instrument, the material portions of which are as follows: "THIS INDENTURE made this 15th day of May, 1915, between MYRA C. KITCHEN, * * * party of the first part, and the NEW YORK LIFE INSURANCE & TRUST COMPANY, a corporation organized under the laws of the State of New York, * * * party of the second part, * * *; WITNESSETH: "That the party of the first part in consideration *137 of the sum of one dollar, * * * paid by the party of the second part * * * has granted, bargained, sold, assigned, transferred and set over and by these presents does grant, bargain, sell, assign, transfer and set over, unto the said party of the second part, the indentures of mortgage hereinafter described, together with the bonds or obligations therein mentioned and the money due and to grow due thereon, with the interest: TO HAVE AND TO HOLD the same unto the said party of the second part, its successors and assigns forever. "IN TRUST, NEVERTHELESS, for the following uses and purposes: "To take possession of and hold the said bonds and mortgages and the proceeds thereof, when received, and all reinvestments of such proceeds as a trust fund during the life of the party of the first part, and to invest and keep invested the principal of such fund, and to collect and receive the income, interest, dividends, issues and profits derived therefrom, or from any property by which the said fund, or any part thereof, may at any time be represented, and after paying and discharging all taxes, excises and other charges, which may be lawfully imposed upon the property constituting *138 the principal of the trust estate, or upon the income derived therefrom, and all proper and necessary expenses incurred or paid in the administration of the said trust, and in the care and preservation of the trust estate, and in reinvesting the principal thereof, and duly accounting for the same and for the income thereof when lawfully required so to do, to pay over the net income of said trust estate to the party of the first part as and when received by the said trustee, after deducting or providing for the charges and expenses aforesaid, during her life, and upon her death to divide the principal of the trust estate into two equal parts or shares and to hold each of said parts upon separate trusts and invest and reinvest the principal of each of said shares and receive the income, interest, dividends, issues and profits derived therefrom, and after deducting or providing for the expenses and charges above mentioned, to pay over the net income of one of said shares, as and when received, to the daughter of the party of the first part Mary Constant Kitchen Lippincott, wife of Wells A. Lippincott, during her life, and upon her death to pay over and distribute the principal of *139 the share so held in trust for her benefit during her life, to her issue, to be equally divided among such issue, per stirpes; and to pay over the net income of the other share, as and when received, to the son of the party of the first part, Victor Constant Kitchen, during his life, and upon his death to pay over and distribute the principal of the share so held in trust for his benefit during his life, to his issue, to be equally divided among such issue, per stirpes; provided, however, that if either of the said children of the party of the first part, shall die in her life time with or without issue the trust for the benefit of such child shall terminate and one-half of the principal of the trust estate of which the party of the first part is entitled to the income during her life shall revert to and become the absolute property of the party of the first part, and be paid over to her absolutely upon the death of such child; and the other half shall be held in trust for the benefit of the party of the first part during her life, and for the benefit of the surviving child during his or her life, and be paid to the issue of such surviving child on his or her death, *140 as hereinbefore provided. But if both of such children shall die, with or without issue, in the lifetime of the party of the first part, then on the death of the last surviving child all trusts created by this instrument shall terminate, and the whole of said trust estate shall revert to and become the absolute property of the party of the first part and be paid over and assigned to her by said trustee upon demand…." In accordance with the provisions of the trust instrument, decedent, on or about May 15, 1915, transferred certain securities to the trustee, which had a fair market value on the date of decedent's death, December 15, 1938, of $16,146.88. Myra C. Kitchen, decedent, was born on April 4, 1855. She was survived by her daughter born April 26, 1886 and her son born April 9, 1891. Decedent did not at any time relinquish the life estate provided for her by the trust agreement and received the income pursuant thereto. The provisions of the agreement were not modified or changed during her lifetime. The estate tax return was filed with the collector for the fifth district of New Jersey. In determining the deficiency here involved the respondent included in decedent's gross *141 estate $16,146.88 as the value at the date of decedent's death, of the property transferred under the trust instrument. There is no contention by respondent that the transfer was made in contemplation of death. Neither does respondent rely, in support of his position, on the fact that the decedent retained a life interest in the property conveyed to the trust. He relies solely on the fact that under the terms of the trust instrument the trust would terminate on the death of the last survivor of her two children during the lifetime of the decedent grantor. whereupon, "the whole of said trust estate shall revert to and become the absolute property" of the grantor; and contends that because of that fact the value of the property, at the date of decedent's death, transferred to the trust is includible in the gross estate of decedent under section 302 (c) of the Revenue Act of 1926, as amended. [1]
*142 Petitioners contend: (1) that no part of such value is includable in the gross estate of decedent, because when the transfer was made to the trust there was no statute imposing an estate tax and that to apply section 302(c), as amended, would be retroactive taxation in violation of the Fifth and Fourteenth Amendments to the Constitution; (2) that even if application of the statute here would be constitutional none of the $16,146.88 should be included in the value of the gross estate of decedent under section 302(c), supra; and (3), in the alternative, that if any of the value of the trust property is properly includable in the gross estate of the decedent under that section such value should be limited to the value of decedent's contingent reversionary interest at date of her death. We will now consider the first contention of petitioners. Section 302(h) of the Revenue Act of 1926, in force and effect at the time of decedent's death, provides that section 302(c), supra, (which was also then in effect), "shall apply to the transfers, trusts, estates, interests, rights, powers, and relinquishment of powers, * * * whether made, created, arising, existing, exercised, or relinquished *143 before or after the enactment of this Act." Section 302(h) was enacted February 26, 1926. It is thus clear that Congress intended that section 302(c), supra, should be retroactive in operation. United States v. Jacobs, 306 U.S. 363. Is Section 302(c), supra, as proposed to be applied here, nevertheless in contravention of the Fifth Amendment to the Constitution as prohibiting retroactive taxation? In Commissioner of Internal Revenue v. Flanders, 111 Fed. (2d) 117, a constitutional question identical with the one here with reference to the Fifth Amendment was presented. There, a trust instrument executed and delivered prior to the enactment of the first estate tax statute in 1916 provided that the grantor should receive the net income of the trust for life with remainders over. The grantor died on September 19, 1933. The trust was to terminate on the death of the survivor of two younger brothers of the grantor whereupon the corpus of the trust was to be paid over to the grantor, if living; otherwise, to grantor's surviving issue, or, if none, to the grantor's surviving brothers and the issue of any deceased *144 brother. There, as here, the taxpayer contended that because the trust was created prior to the enactment of an estate tax statute a retroactive application of section 302(c), supra, would be unconstitutional under the Fifth Amendment. The Court held against this contention of the taxpayer and held further that, in view of the decision in Helvering v. Hallock, 309 U.S. 106, the grantor's possibility of reverter was a taxable interest under section 302(c) of the Revenue Act of 1926, saying with reference to the application of the statute being unconstitutional when retroactively applied: * * * It is urged that the Hallock case involved a trust created after the estate tax law was enacted; and that to apply the statute retroactively to Trust No. 4 would be unconstitutional, as shown by Nichols v. Coolidge, supra. However, in the Coolidge case the settlor's death determined his life estate but did not take from him an interest in the corpus or augment the estate created in the remaindermen by the trust deed. In the case at bar, the remaindermen would have taken nothing had the settlor survived the term of the trust; his death was *145 the event that destroyed his possibility of reverter and brought into being remainders of which they had full dominion. Such shifting or economic benefit renders the corpus of the trust taxable under the latest utterance of the Supreme Court. Where a constitutional question is presented growing out of a claimed retroactive application of a statute such as that here involved, it is the date of decedent's death which is to be considered in the solution of such question rather than the date of the instrument creating the contingent right of reversion. United States v. Jacobs, supra;Adriance v. Higgins, 113 Fed. (2d) 1013, and authorities cited therein; Commissioner of Internal Revenue v. Washer, 127 Fed. (2d) 446; certiorari denied, 317 U.S. 653; Bodell v. Commissioner, 138 Fed. (2d) 553, affirming 47 B.T.A. 62; certiorari denied, 321 U.S. 778. Cf. Reinecke v. Northern Trust Co., 278 U.S. 339; Estate of Lester Hofheimer, 2 T.C. 773, 780. *146 Here the date of decedent's death was more than 12 years after the enactment of sections 302(c) and (h), supra, which continued in force and effect to and beyond the date of decedent's death. We think the principle and reasoning applied in the cited cases are controlling, and hold that the application here of the statute in question is not unconstitutional as contravening the Fifth Amendment to the Constitution. The Fourteenth Amendment to the Constitution obviously has no application here as no state statute is involved. Having disposed of the constitutional question we will now consider the second contention of petitioners. They make no argument in support of this contention, but merely state it to the effect that none of the value of the property transferred to the trust at the date of decedent's death ($16,146.88) should be included in decedent's gross estate under section 302(c), supra. We do not agree with this contention. In the trust instrument the grantor decedent, after first providing for payment of the net income to herself for life, provided for a life estate to each of her two children, to begin immediately after her death with remainder to the issue of *147 each child in the part held for his or her benefit. The trust instrument expressly provided that if either child should die in the lifetime of the grantor, with or without issue, the part held for the benefit of the child so dying should revert to the grantor, and the part held for the benefit of the surviving child should be held for the benefit of the grantor during her life and for the benefit of the surviving child during his or her life and be paid to his or her issue upon his or her death, but that if both children should die, with or without issue, in the lifetime of the grantor, the whole of the trust estate should revert to the grantor upon the death of the last surviving child. Under the latter provision the grantor decedent had a possibility of reverter in the whole of the trust property contingent upon whether or not she survived either or both of her children. In this respect the case is indistinguishable in any material way from Helvering v. Hallock, supra, and upon the authority of that case we hold that the transfer in question was one intended to take effect in possession or enjoyment at or after death, within the meaning of section *148 302(c), supra. See also Commissioner v. Flanders, supra;Blunt v. Kelly, 131 Fed. (2d) 632; Fidelity-Philadelphia Trust Co. v. Rothensies (U.S. Dist. Ct., E. Dist. Pa., Jan. 8, 1943); Martha E. Gaston Estate, 2 T.C. 672; Estate of Peter D. Middlekauff, 2 T.C. 203. Cf. Commissioner v. Washer, supra; and Chase Nat. Bank v. United States, 116 Fed. (2d) 625. The petitioners cite no authority in support of their third, and alternative contention, that if any value of the trust property is to be included in the gross estate of decedent such value should be limited to the value at the time of her death of decedent's contingent reversionary interest in that property. In one of the cases considered in Helvering v. Hallock, supra, (No. 183, Rothensies v. Huston), the decedent had created a trust retaining a contingent reversionary interest in the trust property similar to that retained by the decedent here. The property was to revert to the grantor upon the death *149 of a beneficiary, other than the grantor, to whom the trust instrument had transferred a life estate. The life tenant survived the grantor. The Court held that the entire value of the trust property at the time of decedent's death should be included in his gross estate. We think the holding in the Hallock case as to the Rothensies v. Huston case, to the effect that the entire value of the trust property at the time of the death of the decedent should be included in the estate of that decedent, should be applied here, and we accordingly hold that the entire value of the trust property here involved at the time of decedent's death should be included in the gross estate of decedent. See also Blunt v. Kelly, supra;Martha E. Gaston Estate, supra; Fidelity-Philadephia Trust Co. v. Rothensies, supra. Cf. Commissioner v. Washer, supra;Adriance v. Higgins, supra. In another case considered in Helvering v. Hallock, supra, (No. 399, Bryant v. Helvering), where the decedent grantor of a trust had retained a contingent interest *150 in the trust by which the trust property was to revert to him upon the death of his wife, who was given a life estate in the trust, and who had survived the grantor decedent, the Supreme Court affirmed the Circuit Court's holding in affirming, per curiam, the Board of Tax Appeals's opinion. In affirming the holding of the Circuit Court, the Supreme Court said, inter alia, "The Board of Tax Appeals allowed the Commissioner to include in the decedent's gross estate only the value of a 'vested reversionary interest' which the Board held the grantor had reserved to himself." Resort to the Board's opinion, 36 B.T.A. 669, 671, 677, discloses that such "vested reversionary interest" was the entire value of the trust corpus "after excluding the value of the wife's right to the income for life." So what the Supreme Court decided in the Bryant case was that the total value of the trust property at the time of death of the decedent there less the value of the wife's life estate should be included in the value of the decedent's gross estate. In Estate of Peter D. Middlekauff, supra, a similar situation existed as in the *151 Bryant case and there, while we allowed, as was done in the Bryant case, a deduction from the value of the trust property at the time of decedent's death of the value of a life estate in one other than the grantor, which life estate continued from the creation of the trust to beyond the death of decedent, we expressly denied, as not being in accordance with the principle of Helvering v. Hallock, supra, a contention of the taxpayer that the only amount that should be included in the decedent's estate was the value of his possibility of reverter notwithstanding the evidence showed that value on an actuarial basis. We have no such situation here as was presented in the Bryant and Middlekauff cases, where there was a life estate in the trust property which began as a vested interest with the creation of the trust and operated continuously up to the time of decedent's death, and thereafter, the life tenant surviving the decedent. The life estates of the children here did not come into actual existence until after the decedent's death, an event which simultaneously destroyed the possibility of reverter to the decedent, the children being *152 then living. The value of the life estates of the two children is therefore not to be considered in determining the value of decedent's interest in the trust property which is includable in her estate. If, however, we are wrong in our conclusion on this third contention of petitioners, we would nevertheless reach a like result, since the value of decedent's reversionary interest at the time of her death is not shown by the record; the petitioners merely suggesting on brief that the value of the children's interest in the trust property would be disclosed by resort to annuity tables. Decision will be entered under Rule 50. Footnotes
1. SEC. 302 (as amended by section 404 of the Revenue Act of 1934). The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property real or personal, tangible or intangible, wherever situated, except real property situated outside the United States. (a) To the extent of the interest therein of the decedent at the time of his death; * * * * *
(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom: except in case of a bona fide sale for an adequate and full consideration in money or money's worth. * * *↩