Estate of Arthur Sinclair, Deceased, United States Trust Company of New York, Executor, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 3667. Promulgated May 20, 1946.

*Henry S. Hooker, Esq., John McG. Goodale, Esq.*, and *Arnold Furst, Esq.*, for the petitioner.
*Bernard J. Long, Esq.*, for the respondent.

### OPINION.

SMITH, *Judge*: This proceeding involves an estate tax deficiency of $68,643.74. The questions for our determination are whether there should be included in decedent's gross estate either the entire values or the remainder values of the corpora of two trusts which he created during his life, one on September 20, 1928, for the benefit of his wife and others, and the other on November 26, 1935, for the primary benefit of his daughter. Certain other issues raised in the pleadings have been settled by stipulation. The parties have also submitted a stipulation of facts, which we adopt as our findings of fact herein.

The decedent, Arthur Sinclair, died testate on June 3, 1941, a resident of the State of New York. He was survived by his wife, Elizabeth Darnall Sinclair, and a daughter, Elizabeth Shelby Sinclair Hoyle.

An estate tax return was filed by decedent's executor, the United States Trust Co. of New York, on August 3, 1942, with the collector of internal revenue for the third district of New York. In that return the optional valuation date, June 3, 1942, was used in the valuation of the estate.

On September 18, 1928, the decedent and his wife, who were then living apart, entered into a separation agreement in which they made a final division of their estates and settled all of their financial and marital affairs. They agreed to establish a "custodian account" and a "trust fund" for the support of the wife and their daughter. The wife agreed to place in the custodian account with the United States Trust Co. $73,000 cash and 100 shares of stock of Commonwealth Edison Co., the income from which was to be paid to her for life. The decedent was to have a voice in the management of the fund. On his part decedent agreed to establish an irrevocable trust, with the United States Trust Co. as trustee, consisting of certain designated securities the income from which was also to be paid to the wife for life. Decedent further agreed that he would pay to the United States Trust

Co. monthly on and after October 1, 1928, for the account of his wife a sum of money which, when added to the income from the custodian account and the trust fund, would yield the wife an annual income of $12,000 during her life. The wife was to have custody of their daughter, then 15 years of age, until the daughter should become 18 years of age and was to provide a certain part of the cost of the daughter's maintenance and support out of the income which she was to receive from the United States Trust Co. Decedent was to bear the cost of the daughter's schooling, clothing, and medical care, with certain specified limitations, until she became 19 years of age.

The decedent created the trust referred to in the separation agreement on September 20, 1928, naming the United States Trust Co. sole trustee. Under the terms of the trust agreement the trustee was to pay the net income to the wife for life in equal monthly payments. It was further provided that:

2 – Upon the death of the said Elizabeth Darnall Sinclair, should it occur on or prior to January 1, 1948 and should my daughter, Elizabeth Shelby Sinclair be then alive, the Trustee shall pay the net income therefrom, after deducting all proper charges and expenses, to Elizabeth Shelby Sinclair for and during her natural life until January 1, 1948 when the Trustee shall pay and transfer the said entire trust estate to Elizabeth Shelby Sinclair outright should she then be living.

3 – Should the death of Elizabeth Darnall Sinclair occur after January 1, 1948, then upon the death of the said Elizabeth Darnall Sinclair the Trustee shall pay and transfer the said entire trust estate to Elizabeth Shelby Sinclair outright should she then be living.

4 – Should Elizabeth Shelby Sinclair predecease Elizabeth Darnall Sinclair then upon the death of the said Elizabeth Darnall Sinclair the Trustee shall pay and transfer the said entire trust estate to any lawful issue per stirpes of Elizabeth Shelby Sinclair living at the time of the death of Elizabeth Darnall Sinclair, and in default of any such lawful issue then living, the Trustee shall pay and transfer the said entire trust estate to the Grantor outright; but should the said Grantor also not be living at that time, then to such persons as he may by his last will and testament appoint, and in default of such appointment, said trust estate shall constitute and be disposed of as part of his estate.

5 – Should Elizabeth Darnall Sinclair predecease Elizabeth Shelby Sinclair and should Elizabeth Shelby Sinclair die before January 1, 1948, then and in that event the Trustee shall pay and transfer said entire trust estate to the lawful issue per stirpes of Elizabeth Shelby Sinclair living at the time of her, Elizabeth Shelby Sinclair's death, and in default of any such lawful issue, then the Trustee shall pay and transfer the said entire trust estate to the Grantor outright, but should the said Grantor also not be living at that time, then to such persons as he may by his last will and testament appoint, and in default of such appointment then the said trust estate shall constitute and be disposed of as part of his estate.

It is stipulated that the value of the property transferred to the trust was $204,893.64 at the date of death of the decedent and $179,-250.14 on June 3, 1942, the valuation date, and that the value of the

wife's life estate "shall for the purposes of inclusion or exclusion from the gross estate of the decedent be deemed to be $48,722.89, and the value of the remainder interests after said life estate shall be deemed to be $130,527.25." It is further stipulated that the trust was not made in contemplation of death.

In his will the decedent appointed his sister and stepdaughter and two cousins to receive the remainder of the trust fund "whenever and if ever all of the conditions precedent set out in Paragraphs 4 and 5 of said Indenture permit, and subject to all the conditions and obligations contained in said Indenture." He also directed that three-fourths of his residuary estate be set aside and as much of the income therefrom as might be required to be used to pay his wife the amounts guaranteed her under the separation agreement.

The respondent has included in decedent's gross estate under section 811 (c), Internal Revenue Code, the entire value of the trust corpus at the valuation date, $179,250.14. Petitioner contends that all of such amount should be excluded.

But for the fact that the decedent in granting the property hereunder to trust created a presently vested intervening life estate in his wife, this case is in all material respects comparable to *Fidelity-Philadelphia Trust Co. (Stinson Estate)* v. *Rothensies*, 324 U. S. 108. Here, as in that case, the grantor retained the right to appoint by will the recipients of the remainder interests in the event the remaindermen did not survive him, or in the event of failure of remaindermen after his death. In the *Stinson* case the daughters were the holders of life estates, but, if they did not survive the grantor or leave issue surviving, the grantor had the right to dispose of the property by will, which power, in such circumstances, the Supreme Court said constituted the string which held the corpus of the trust within the grantor's estate for Federal estate tax purposes. In the instant case there were a number of conditions upon which the vesting of the remainder interests was contingent. Some of these contingencies are in addition to the comparable contingencies found in the *Stinson* case. For instance, the remainder interests would vest at January 1, 1948, if the daughter or her issue survived, and her mother, the holder of the intervening life estate, had died before that date; or after January 1, 1948, they would vest upon the death of the mother if the daughter or issue survived. As in the *Stinson* case, however, it was necessary that the daughter or her issue survive the grantor, for unless there was such survivorship the trust estate would already have reverted to the grantor unless the mother, the holder of the life estate, still lived, and in that event the grantor's power of appointment would still exist. The facts show that both the daughter and her mother did survive the

grantor. It accordingly follows that unless and until the daughter does survive the mother or leave issue surviving, the grantor's power of appointment by will exists and will control the disposition of the remainder interests, since the facts show that the grantor, by his will, did take the steps necessary to make that power of appointment effective in the event of failure of the conditions prescribed by him in his grant to trust. Since the string retained by the grantor to the corpus of the trust was not severed prior to his death and can not be severed until the happening of contingencies at some date subsequent to his death, what the Supreme Court said in the *Stinson* case might just as well have been said in the instant case. Thus, the Supreme Court said in that case:

* * * Only at or after her death was it certain whether the property would be distributed under the power of appointment or as provided in the trust instrument. * * * The remainder interests of the descendants of the daughters were contingent upon their surviving both the decedent and the daughters and took effect in possession only after the death of the decedent. Thus until the moment of her death *or until an undetermined time thereafter* the decedent held a string or contingent power of appointment over the total corpus of the trust. The retention of such a string, which might have resulted in altering completely the plan contemplated by the trust instrument for the transmission of decedent's property, subjected the value of the entire corpus to estate tax liability.

* * * It is enough if he [the grantor] *retains some contingent interest in the property until his death or thereafter,* delaying until then the ripening of full dominion over the property by the beneficiaries. * * * [Emphasis supplied.]

The above pronouncements of the Supreme Court appear to apply directly and specifically to the situation here. At the time of his death the power to appoint the recipients of the remainder interests in the corpus of the trust stood in the grantor, as it does even at the present time, subject only to divestment if the grantor's daughter or her issue survive the contingencies which the grantor prescribed as sufficient to defeat his retained power of appointment.

There is one feature of the instant case which is unlike the *Stinson* case. The decedent here, under the terms of his grant to trust, not only reserved the power to appoint the recipients of the corpus of the trust, subject to the contingencies prescribed, but he also specifically retained a possibility of reverter. That possibility of reverter is remote, however, and in that respect is comparable to the possibility of reverter retained in *Estate of Harris Fahnestock,* 4 T. C. 1096. See also *Frances Biddle Trust,* 3 T. C. 832, and *Estate of Mary B. Hunnewell,* 4 T. C. 1128. Under the rule in those cases such remote possibility of reverter is not sufficient to bring the corpus of the trust into the estate of the grantor for Federal estate tax purposes. The fact, however, that the possibility of reverter is too remote to bring the corpus of the trust into

the estate of the grantor gives us no license to ignore the *Stinson* case and its applicability to the instant case where there is a retained power of appointment, subject to contingencies which are not determined until at and after the death of the grantor. To use the words of the Supreme Court in the *Stinson* case, "It is enough if he retains some contingent interest in the property until his death or thereafter."

Making a further comparison between the instant case and the *Stinson* case, there does seem to be in this case sufficient grounds for concluding that, since the retained right of the grantor applies only to the interests succeeding the intervening life estate of his wife, only those succeeding interests should be included in the gross estate. The life estate of the wife was carved out at the time of the grant to trust and it was subject to no power retained by the grantor or to any other contingency. That the Supreme Court at the time it considered and decided the *Stinson* case took note of such cases as those above cited is evidenced by reference to the statement by Mr. Justice Douglas in his concurring opinion to the comparable situation which existed in *Helvering* v. *Hallock*, 309 U. S. 106, wherein he pointed out that in that case the life estate was excluded, saying, "It was excluded because it took effect in possession or enjoyment when the trust was created." Such was the situation here. Cf. *Estate of Peter D. Middlekauff*, 2 T. C. 203, wherein we held in a similar situation that the value of the surviving wife's life interest in a trust was not includible in the gross estate of her deceased husband. In the *Stinson* case the value of the entire estate was included in the grantor's gross estate because there the grantor had not, at the time of creating the trust, created an intervening life estate, but had reserved the life estate unto herself, as well as the contingent power over the remainder interests.

We conclude that the respondent erred in including in the gross estate of decedent the value of the surviving wife's life interest, which was stipulated to be in the amount of $48,722.89; but that he did not err in including in the gross estate the value of the remainder interest of the trust corpus, which it is stipulated was $130,527.25.

The second trust involved in this case was created by decedent on November 26, 1935, and was for the sole benefit of his daughter, Elizabeth Shelby Sinclair. The trust agreement provided that the income was to be paid to her for life and that:

Should Elizabeth Shelby Sinclair predecease the Grantor, leaving no issue her surviving, the principal and any accumulated income of this trust shall be paid and transferred by the Trustee to the Grantor outright, and this trust shall terminate.

Should Elizabeth Shelby Sinclair predecease the Grantor, leaving issue her surviving, or should the Grantor predecease Elizabeth Shelby Sinclair, then in either of those events, upon the death of said Elizabeth Shelby Sinclair, the Trustee shall pay and transfer the entire trust estate to such persons as Eliza-

beth Shelby Sinclair may by her last will and testament appoint, and in default of such appointment said trust estate shall constitute and be disposed of as part of her estate.

It is stipulated that the value of the transferred property on the valuation date, June 3, 1942, was $93,958.30; the value of the life interest given decedent's daughter was $66,401.15, and the value of the remainder interests therein was $27,557.15.

It is further stipulated that decedent filed a gift tax return covering the transfer in trust and paid a gift tax thereon in the amount of $3,734.54.

The transfer in trust was not made in contemplation of death.

In his deficiency notice the respondent determined that the entire value of the trust property at the valuation date is includible in the decedent's gross estate. He now concedes, however, that the value of the daughter's life estate should be excluded.

Read together, the two above quoted clauses of the trust agreement spell out a trust conveyance for the benefit of the daughter for life, with remainder to her appointees if she should survive the grantor, or even if she should predecease the grantor leaving issue surviving, with a right of reversion in the grantor should the daughter predecease him leaving no issue. Obviously, the grantor's death cut off the possibility of reverter and enlarged the daughter's estate to the extent of giving her the right to dispose of the property by appointment in her will, or, upon her failure to appoint, to have the property disposed of as a part of her estate. The daughter had no issue at the time of the grantor's death.

At the time the trust was created the daughter was 22 years of age and had no issue. It was not a very remote possibility that the daughter would predecease the grantor, leaving no issue surviving, in which case the trust principal was to revert to him. On the other hand, there was only a remote possibility that the daughter would predecease the grantor leaving issue surviving her, which was the only contingency that could result in the ultimate vesting in possession and enjoyment of the trust property before the death of the grantor.

In any event, we think that the provision of the trust agreement under which the trust corpus would revert to the grantor if his daughter should predecease him, leaving no issue surviving, brings this trust under the rule of *Helvering* v. *Hallock*, *supra*, and *Fidelity-Philadelphia Trust Co.* (*Stinson Estate*) v. *Rothensies*, *supra*, and like cases.

At the hearing counsel for the petitioner conceded as much, but he takes the position that, nevertheless, the value of the remainder interest in the trust estate is to be excluded from the gross estate

under the provisions of section 81.17 of Regulations 105. The provisions of that regulation upon which petitioner relies read as follows:

SEC. 81.17. *Transfers conditioned upon survivorship.* * * *

Where the transfer was made during the period between November 11, 1935 (that being the date upon which the Supreme Court of the United States rendered its decisions in the cases of *Helvering* v. *St. Louis Union Trust Co.* (296 U. S. 39) and *Becker* v. *St. Louis Union Trust Co.* (296 U. S. 48)), and January 29, 1940 (that being the date upon which such Court rendered its decisions in *Helvering* v. *Hallock* and companion cases (309 U. S. 106)), and the Commissioner, whose determination therein shall be conclusive, determines that such transfer is classifiable with the transfers involved in such two cases decided on November 11, 1935, rather than with the transfer involved in the case of *Klein* v. *United States* (283 U. S. 231), previously decided by such Court, then the property so transferred shall not be included in the decedent's gross estate under the provisions of this section, if the following condition is also met: Such transfer shall have been finally treated for all gift tax purposes, both as to the calendar year of such transfer and subsequent calendar years, as a gift in an amount measured by the value of the property undiminished by reason of a provision in the instrument of transfer by which the property, in whole or in part, is to revert to the decedent should he survive the donee or another person, or the reverting thereof is conditioned upon some other contingency terminable by decedent's death.

The respondent contends that his determination under the quoted regulation is conclusive and is not reviewable by this or any other court.

The obvious purpose of the regulation is to give relief in certain cases and upon certain conditions from the rule of *Helvering* v. *Hallock*, *supra*, as applied to those trust conveyances which may have been made in reliance upon the decisions of the Supreme Court in *Helvering* v. *St. Louis Union Trust Co.* and *Becker* v. *St. Louis Union Trust Co.*, and before the decision in *Helvering* v. *Hallock*. The regulation was not promulgated in response to any mandate of Congress and it does not purport to interpret or implement any provision of the statute or to give effect to any ruling of the courts. Whether the regulation is authorized by law and would under any circumstances be enforceable by this or any other court, we do not need now to decide. By its own terms the regulation is to be applied only where the Commissioner determines "that such transfer is classifiable with the transfers involved in such two cases [*Helvering* v. *St. Louis Union Trust Co.* and *Becker* v. *St. Louis Union Trust Co.*]." The Commissioner has not made any determination that the transfer under consideration is classifiable with the transfers involved in the cited cases. Thus, the regulation is not applicable here, whatever may be said of its validity or enforceability.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

OPPER, *J.*, concurs only in the result.